IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARK SPENCER CADY ) | |
|     *Petitioner*, ) | |
| ) | |
| v. ) | No. 1:22-cv-00199 (MSN/IDD) |
| ) | |
| JEREMY A. FALLS, *et al.*, ) | |
|     *Respondents*. ) | |

**MEMORANDUM OPINION**

    Before the Court is Petitioner Mark Spencer Cady's Petition for a Writ of Habeas Corpus. Pet. (Dkt. No. 1). Mr. Cady is currently free on bail. He petitions this Court for a writ of habeas corpus to provide relief from his three-month sentence of incarceration for "violations of his Constitutional right to Due Process and right against Double Jeopardy."[1] *Id.* at 1.

    For the following reasons, Mr. Cady's Petition for Writ of Habeas Corpus, Dkt. No. 1, is DENIED.

### I.   BACKGROUND

    On September 26, 2019, the Honorable Herman A. Whisenant, Jr. held a one-day jury trial in the matter of *Commonwealth v. Cady*. The evidence presented at trial showed that on his drive to work one clear, fall day, Mr. Cady struck and killed Mr. Nelson, a motorcyclist stopped in the street waiting to turn left into his driveway. Mr. Cady had been in his vehicle for about ninety seconds before the collision, was driving just over the speed limit, and listening to the radio. There is no evidence in the record that Mr. Cady was on his cell phone, eating, or using GPS.

---

[1] Mr. Cady was sentenced to confinement in jail for a period of three (3) months; a fine of $2,500.00; and costs of the prosecution in the amount of $941.00. Pet. at 6. Mr. Cady has already served "approximately two months of his three-month sentence." Mem. In Support of Mtn. to Stay State Ct. Proceedings (Dkt. No. 4) at 3. Mr. Cady is not currently incarcerated as he was granted bail by the Supreme Court of Virginia pending review of his reckless driving conviction and three-month sentence. *Id.* at 2; Pet. at 6.

At the time of the collision, Mr. Nelson was stopped at the top of a slight hill. Before Mr. Cady approached the motorcyclist there was a slight dip in the road, but the portion of the road where the motorcyclist was struck was a straight road and unobstructed. State Trooper Mark Brill testified at trial that Mr. Cady would have driven for approximately six to eight seconds with the motorcyclist in view. Mr. Cady, however, failed to take any evasive action prior to striking the motorcyclist. Mr. Cady later stated in his Petition that he did not see Mr. Nelson at any time before hitting him. Pet. at 3. Immediately after the collision Mr. Cady stated, "What happened?"

A truck driver approaching the motorcyclist from the opposite direction testified that he saw Mr. Nelson stopped in the road with his turn signal on. Seeing the motorcyclist, the truck driver slowed down as he approached. The truck driver also saw Mr. Cady approaching at a constant rate of speed and that he made no effort to slow down.

Following the close of evidence, the trial court held a charging conference. Over the objections of Mr. Cady's counsel, the trial judge adopted the Virginia Model Jury Instruction for reckless driving and rejected defense counsel's request for a modified jury instruction that included the phrase "recklessly" and a separate jury instruction defining "recklessness."[2] The jury, so instructed, convicted Mr. Cady of misdemeanor reckless driving, and he was sentenced to three months in jail and a $2,500 fine. *See* Va. Code Ann. § 46.2-852 (1989) ("Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving."). On August 11, 2020, the Court of Appeals of Virginia reversed the

---

[2] The trial court's reason for adopting the model jury instruction in petitioner's case was that the model jury instruction "comes from the higher court." Dkt. No. 2-2 at 222. That statement implicitly alluded to the fact that Virginia's model jury instructions are "[w]ritten, revised, and updated by The Supreme Court of Virginia's Model Jury Instruction Committee," which is "[a]ppointed by the Chief Justice of the Supreme Court of Virginia" and "comprised of outstanding and experienced Virginia judges, practicing attorneys, and law professors who devote substantial time in the maintenance of this essential litigation resource." *See Virginia Model Jury Instructions – Criminal*, available at https://store.lexisnexis.com/products/virginia-model-jury-instructions-criminal-skuusSku6572.

conviction and dismissed the case for insufficient evidence to support a conviction. Dkt. No. 1-3 at 1. On October 28, 2021, the Supreme Court of Virginia reversed the Court of Appeals of Virginia and reinstated the trial court's conviction order. Dkt. No. 1-2 at 1. On February 23, 2022, Mr. Cady filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 for violations of his constitutional right to due process and right against double jeopardy. Pet. at 1. Petitioner claims his due process right was violated twice over: the jury was not properly instructed on *mens rea*, an essential element of reckless driving and there was insufficient evidence to establish proof beyond a reasonable doubt of reckless driving. Petitioner also claims his right against double jeopardy was violated when the Commonwealth appealed to the Supreme Court of Virginia after his conviction had been overturned by the Court of Appeals of Virginia. Pet. at 1. On April 11, 2022, Respondent filed a Response to Petitioner's Petition for Writ of Habeas Corpus. Resp. (Dkt. No. 14). On May 5, 2022, Petitioner filed a Reply Memorandum to Jeremy A. Falls' Response to Petition for Writ of Habeas Corpus. Pet. Reply (Dkt. No. 17). And on June 17, 2022, the Court heard oral argument on the matter. The Petition is fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, the Court may not grant relief on Mr. Cady's petition unless the state courts' "adjudication of [his] claim[s] resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The phrase "'clearly established Federal law . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

3

materially indistinguishable facts." *Id.* at 412–13. A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "For such an 'unreasonable application' to exist, the state court's decision must have been 'so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility for fairminded disagreement.*'" *Burr v. Jackson*, 19 F.4th 395, 403 (4th Cir. 2021) (quoting *White v. Woodall*, 572 U.S. 415, 420 (2014)). The state court adjudication is not unreasonable merely because a District Court may reach a contrary conclusion on a "close" issue. *Bell v. Jarvis*, 236 F.3d 149, 162 n.10 (4th Cir. 2000) (citing *Tucker v. Catoe*, 221 F.3d 600, 614 (4th Cir. 2000)); *Vick v. Williams*, 233 F.3d 213, 220 (4th Cir. 2000) (noting "that a state court's decision may be objectively reasonable even where . . . a federal court deciding the issue on direct appeal would come to a different conclusion.").

### III. DISCUSSION

Petitioner has alleged three distinct grounds for his unlawful detention: (1) the jury was not properly instructed on the essential element—*mens rea*—of reckless driving; (2) the evidence was insufficient to support his conviction for reckless driving; and (3) double jeopardy barred the Commonwealth's appeal to the Supreme Court of Virginia.

### A. **Mr. Cady has exhausted his state court remedies.**

To exhaust a claim, a federal habeas petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim

4

before a federal court can hear the claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. *Id.* The habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim to meet the exhaustion requirement. *Id.* "The exhaustion requirement, though not jurisdictional, is strictly enforced." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Granberry v. Greer*, 481 U.S. 129, 131 (1987); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)).

Mr. Cady contends he has fully exhausted his jury instruction claim because he "objected to the instructions from the trial court level throughout the appeals" and explicitly raised his due process challenge to those instructions on November 11, 2021 when he "requested reconsideration of the [Virginia] Supreme Court's ruling . . . because his conviction was based upon fundamentally erroneous jury instructions." Pet. at 8. Respondent did not raise exhaustion in his opposition. However, during oral argument Respondent challenged the Court's jurisdiction to rule on whether the jury was properly instructed. *See* Minute Entry, June 17, 2019 (Dkt. No. 19).

The Court finds that Mr. Cady has sufficiently exhausted his state court remedies. Mr. Cady's assignment of error on appeal and petition for rehearing before the Supreme Court of Virginia both raised his objections to the delivered jury instructions due to their purported failure to define the requisite *mens rea*.[3] *See id.*; Pet. at 6 n.1; Dkt. Nos. 1-4 and 1-5. Although the Virginia state courts did not opine on Mr. Cady's due process jury instruction claim, the issue was fairly

---

[3] The Court recognizes that "[t]he Fourth Circuit has specifically stated that a petitioner does not exhaust an issue that is only raised in a petition for rehearing." *Pratt v. Clarke*, Case No. 2:10-cv-00599, 2011 WL 3269643, at *2 (E.D. Va. June 1, 2011) (citing *Hedrick*, 443 F.3d at 365 n.1). But the Court is satisfied that petitioner's claim as to the jury instruction given was not *only* raised in his petition for rehearing. *See* Dkt. No. 1-4 at 3 (describing past objections to the jury instructions given and making clear that petitioner believed he had been improperly convicted "[w]ithout any instructions defining 'reckless' [and with] no other *mens rea* instructions"). Moreover, because the Court denies relief on petitioner's jury instruction claim, it has the discretion to address the merits of the claim irrespective of whether petitioner properly exhausted it. *See infra* note 4.

presented, and the Virginia state courts had an opportunity to consider it. Accordingly, the Court finds Mr. Cady has fully exhausted his state court remedies.

B.     **The jury instructions were constitutionally adequate.**

Petitioner alleges that the trial court violated his constitutional right to due process by "refus[ing] any instruction on *mens rea*, which is the essential element of reckless driving."[4] *See* Pet. at 4.

"[A] state trial court's decisions related to jury instructions turn on interpretations of state law" rendering most challenges to those instructions "beyond the scope of federal habeas review." *Dixon v. Johnson*, Case No. 1:09-cv-01037, 2010 WL 3660642, at *3 (E.D. Va. Sep. 13, 2010) (Hilton, J.); *see also Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (a federal court may grant relief based on state jury instruction errors only in extraordinary cases); *Ellison v. Angelone*, Case No. 1:01-cv-00751, 2001 WL 34062434, at *3 (E.D. Va. Nov. 8, 2001) (Hilton, J.) (citing *Grundler v. North Carolina*, 283 F.2d 798 (4th Cir. 1960) ("federal courts have limited discretion to undermine state court determinations of state law" and "[j]ury instructions are typically matters of state law and procedure which do not involve federal constitutional issues")). A jury instruction claim, therefore, is cognizable on habeas review only if "the ailing instruction by itself so infects the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also id.* at 146–47 ("a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of

---

[4] 28 U.S.C. § 2254(b)(2) states that an application for a writ of habeas corpus in federal court may be denied on the merits, notwithstanding the applicant's failure to exhaust the remedies available in state court. And courts in this district have done so with the approval of the Fourth Circuit. *See Swisher v. True*, 325 F.3d 225, 232–33 (4th Cir. 2003) (affirming district court's decision to deny habeas relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted"); *Guarino v. Clarke*, Case No. 1:21-cv-01133-AJT, 2022 WL 1750618, at *5, *7 (E.D. Va. May 31, 2022) (Trenga, J.) (recognizing district court's discretion to deny habeas relief on merits of unexhausted claim).

the overall charge"); *Grundler* 283 F.2d at 802 ("It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.").

Relevant here, clearly established federal law instructs that the "Due Process clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged." *Sandstrom v. Montana*, 442 U.S. 510, 520 (1979). The question before the Court is whether the Virginia state courts unreasonably applied that law in upholding a conviction based on the following jury instruction:

> The Commonwealth must prove beyond a reasonable doubt each of the following elements of [reckless driving]. 1, that the defendant was driving a vehicle on a highway, and 2, that he was driving in a manner so as to endanger the life, limb or property of any person.

Dkt. No. 2-2 at 238.

Petitioner cannot dispute that the instruction followed the Virginia Model Jury Instructions for reckless driving nor that the instruction required the jury to find every statutory element of the crime. *See* Va. Code Ann. § 46.2-852 (1989) ("Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly *or* at a speed *or* in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving.") (emphases added); Virginia Model Jury Instructions – Criminal, No. 45.100 ("The defendant is charged with the crime of reckless driving. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime: (1) That the defendant was driving a vehicle on a highway; and (2) That he [was driving in a manner so as to endanger the life, limb or property of any person; name action prohibited by Va. Code Ann. § 46.2-853 to § 46.2-865].") (brackets in original). Under such circumstances, a reviewing court generally does not find error in the given instruction. *See, e.g.*, *United States v. Benford*, 574 F.3d 1228, 1231 n.1 (9th Cir. 2009) ("The jury instructions

7

followed the Ninth Circuit Model Jury Instructions and required the jury to find all the statutory elements of the crime. There was, therefore, no error, plain or otherwise."); *Ellison*, 2001 WL 34062434, at *4 (granting no relief on jury instruction that "include[d] all necessary elements of [the charged crime], as prescribed by statute" and finding that "[e]very element of the crime ha[d] been represented in the model jury instruction").

The issue here, however, is that the Supreme Court of Virginia has recognized criminal recklessness as "the requisite *mens rea* specified in [Virginia] Code § 46.2-852 for a misdemeanor reckless-driving conviction, [which] requires a reckless 'disregard by the driver of a motor vehicle for the consequences of his act and an indifference to the safety of life, limb, or property' of others.'" *Commonwealth v. Cady*, 300 Va. 325, 327 (2021) (quoting *Powers v. Commonwealth*, 211 Va. 386, 388 (1970)). But at no point in petitioner's trial did the jury receive any such instruction on "the requisite *mens rea*" required "for a misdemeanor reckless-driving conviction." The question before the Court is whether the Constitution required such instruction. The Supreme Court of Virginia implicitly found due process required no such instruction. This Court cannot find that conclusion was unreasonable.

Instead of being instructed on recklessness, the jury received a model instruction that mirrored "one of the alternative statutory definitions of reckless driving." *Mayo v. Commonwealth*, 218 Va. 644, 648 (1977) ("Driving 'at a speed or in a manner so as to endanger life, limb or property' is one of the alternative statutory definitions of reckless driving"). The key to that "alternative statutory definition" is the phrase "so as to." As the United States Court of Appeals for the Fourth Circuit has observed, "the phrase 'so as to' is best read as an idiomatic expression connecting an action . . . with its intended effect." *Granados v. Garland*, 17 F.4th 475, 482 (4th Cir. 2021) (citing Christine Ammer, *The American Heritage Dictionary of Idioms* (1997)). It is

8

interchangeable with the phrase "in order to." *Id.* State courts across the country regularly interpret its use in criminal statutes as "requir[ing] a culpable mental state." *Id.* at 482–83 (collecting cases); *see also State v. Sterzinger*, 649 N.W.2d 677, 680–83 (Wis. Ct. App. 2002) (interpreting "so as to interfere with or endanger the operation of the police vehicle" to require "purpose" rather than "result" of interference or endangerment); *Brimberry v. State*, 774 S.W.2d 773, 775–76 (Tex. Ct. App. 1989) (interpreting "so as to injure damage or abuse" to require "intent," not "result").

Indeed, the Fourth Circuit observed that the Supreme Court of Virginia in this case used the "'so as to' phrase to import *mens rea* in Virginia's reckless driving statute" and "require more than the mere result of endangerment." *Granados*, 17 F.4th at 483 (citing *Cady,* 300 Va. at 327). That observation was consistent with the Supreme Court of Virginia's own statement that the determinative question in a reckless driving case is not whether injury resulted but instead whether a person drove in manner that increased "the likelihood of injury to other users of the highways." *Cady*, 300 Va. at 328–29 (internal quotation omitted).

Thus, it is clear that the phrase "so as to" serves as the vehicle through which Virginia includes in its "alternative statutory definition" (and thus its model jury instructions) for reckless driving the *mens rea* required for a conviction.[5] It follows, then, that the "alternative statutory definition" for reckless driving is not akin to "a directed verdict or a strict liability offense." *See* Pet. at 13.

This would be a different case if the instruction given was that the Commonwealth must have proven beyond a reasonable doubt that (1) the defendant was driving a vehicle on a highway,

---

[5] For a point of comparison and support, the statutory definition for reckless driving on a parking lot contains no explicit *mens rea*. It instead provides: "A person is guilty of reckless driving who operates any motor vehicle at a speed or in a manner so as to endanger the life, limb, or property of any person." Va. Code Ann. § 46.2-864 (2011). Virginia courts, however, have had no difficultly finding that the crime's definition "incorporates familiar principles of criminal negligence." *Mehta v. City of Norfolk*, Case No. 2737-05-1, 2007 WL 1049193, at *1 (Va. Ct. App. Apr. 10, 2007).

9

and (2) endangered the life, limb or property of any person. That instruction plainly would omit the *mens rea* required for a reckless driving conviction, would operate as a directed verdict, and likely would violate a defendant's right to due process. But that is not what happened here because the instruction given included the key language "in a manner so as to."[6]

The Court on habeas review, thus, cannot find that the Virginia courts sponsored, endorsed, and then applied a model jury instruction for reckless driving in a manner that permitted conviction upon less than proof beyond a reasonable doubt of *every fact* necessary to constitute the crime of reckless driving. The Court is "unable to discern any *constitutional* inadequacy in the challenged instruction." *See Gilreath v. Robinson*, 544 F. Supp. 569, 575 (E.D. Va. 1982) (emphasis added).

C. **Mr. Cady's conviction is supported by sufficient evidence.**

Mr. Cady contends that his conviction was obtained in violation of his right to due process because, viewing all the evidence in a light most favorable to the government, no rational jury could have found the essential elements of reckless driving beyond a reasonable doubt. For the reasons stated below, the Supreme Court of Virginia's decision is affirmed.

The Supreme Court of Virginia was limited to determining whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012). The court was required to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the

---

[6] The Court recognizes that Judge Russell in his dissent from the Court of Appeals' decision wrote that "Although, by definition, the victim's death establishes that appellant operated his vehicle 'in a manner so as to endanger the life, limb, or property of any person,' it does not by itself establish the requisite level of recklessness." *Cady v. Commonwealth*, 72 Va. App. 393, 411 (Va. Ct. App. 2020) (Russell, J. dissenting). While the Court agrees with the underlying point that "[a] tragic result does not alleviate the Commonwealth's burden", the Court respectfully disagrees with the assertion that the victim's death "by definition" establishes that the driver operated his vehicle "so as to endanger the life, limb or property of any person" because such a conclusion focuses on the result, whereas the case law makes clear that the result does not control when the language "so as to" is employed to capture a culpable mental state.

Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329. (internal quotations and citations omitted). The court's limited review does not intrude on the jury's role "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Musacchio v. United States*, 577 U.S. 237, 243 (2016). The jury has broad discretion "in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw *reasonable* inferences from basic facts to ultimate facts.'" *Coleman*, 566 U.S. at 655 (emphasis added) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This deferential standard does not permit fine-grained factual parsing of the record. *Id.*

*First*, the Supreme Court of Virginia thoroughly examined the reckless driving standard. In Virginia, reckless driving is defined as operating a vehicle "recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person." Va. Code. Ann. § 46.2-852 (1989). The Supreme Court of Virginia explained:

> [A] misdemeanor reckless-driving conviction[] requires a reckless "disregard by the driver of a motor vehicle for the consequences of his act and an indifference to the safety of life, limb, or property" of others. *See Powers v. Commonwealth*, 211 Va. 386, 388 (1970) . . . . "[W]hat distinguishes a speeding violation from the misdemeanor of reckless driving, and the misdemeanor from the felony of involuntary manslaughter, is the likelihood of injury to other users of the highways." *Mayo*, 218 Va. at 648. Determining "the degree of the hazard posed" by the defendant's driving, therefore, heavily "depends upon the circumstances in each case." *Id.*

*Cady*, 300 Va. at 327–29.

*Second*, reviewing the evidence in the "light most favorable" to the Commonwealth, the Supreme Court of Virginia found that "[a]pplying their common sense and experience to these facts, the jur[ors] reasonably could and did conclude that the reason [Mr. Cady] plowed into the victim and his motorcycle without taking any evasive action is that he was not looking at the road and had not been for some time." *Id.* at 329–30. The court concluded that the following evidence

11

supported the jury's verdict: Mr. Cady had music playing; he did not "remember seeing or striking" the motorcycle; immediately after the collision he asked "What happened?"; no evidence suggested that Mr. Cady's view was unobstructed or that he had a medical emergency; the large burgundy motorcycle was stopped immediately in front of Mr. Cady with his left turn signal; and, it was a clear and sunny day when the collision occurred on a straight stretch of road. *Id.* at 330. The jury reasonably inferred that the accident was "not the result of a split-second, momentary failure to keep a lookout, constituting only simple negligence, but rather a lengthy, total, and complete failure to keep a lookout, satisfying the *mens rea* requirement." *Id.* (internal quotations omitted) (emphasis added).

The Supreme Court of Virginia's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility for fairminded disagreement*." *Burr*, 19 F.4th at 403. To some extent, this case is a "close call," as demonstrated by the differing opinions at the state appellate and supreme court levels, but it cannot be said that the Supreme Court of Virginia's decision was patently unreasonable. The state court provided a rational, thorough examination of the requisite *mens rea*, examined the factual record in the light most favorable to the prosecution, and concluded that a reasonable jury could have inferred that Mr. Cady's "lengthy, total, and complete failure to keep a lookout" demonstrated reckless disregard. *Cady*, 300 Va. at 330.

Mr. Cady argues the jury impermissibly disregarded the uncontradicted and not inherently incredible testimony of his expert. Pet. Reply at 4. Mr. Cady's expert Dr. Flombaum, "testified that situational blindness . . . can cause a motorist not to see a motorcyclist directly in his line of sight, even when the driver's eyes are directed at the motorcycle." *Id.* Dr. Flombaum's testimony (as well as the Motorcycle Manual and crash causation study that were not admitted into evidence)

was offered to provide an explanation for why Mr. Cady did not see the motorcyclist—situational blindness. The Commonwealth similarly offered evidence to explain the same. The record includes testimony from the truck driver who witnessed the accident: it was a clear day; he saw Mr. Nelson waiting to turn into his driveway so he slowed down; and, Mr. Cady was on a straight stretch of road when the accident occurred. There is evidence that Mr. Cady had the radio playing and had six to eight seconds where Mr. Nelson would have been visible to Mr. Cady from the crest of the hill, but Mr. Cady did not slow down.

Reasonable people may differ on the inference to be drawn from Mr. Cady's failure to remember seeing or striking the large burgundy motorcycle on a straight road, with a clear, unobstructed view. The jury, as was within their purview, weighed Dr. Flombaum's testimony and reasonably concluded that Mr. Cady failed to see the motorcyclist because of inattention, not situational blindness. Further, viewing the evidence in the light most favorable to the prosecution required the state court reject Dr. Flombaum's testimony because it conflicted with the Commonwealth's explanation of the accident. The circumstantial evidence in this case is sufficient to find Mr. Cady was driving recklessly.

Further, the circumstantial evidence in this case is sufficient to find Mr. Cady was driving recklessly and, his conviction is supported by similar reckless driving cases in Virginia. While it is true that "the mere happening of an accident does not give rise to an inference of reckless driving," *Powers v. Commonwealth*, 211 Va. 386, 388 (Va. Ct. App. 1970), here there is more than the simple occurrence of an accident. Mr. Cady's car did not have a defect and he was not struck by sudden illness. *Id.* at 388–89. "We . . . know how far ahead [Mr. Cady] could or should have seen [the motorcyclist], for the record is [not] silent as to the nature and extent of the view." *Lewis v. Commonwealth*, 179 S.E.2d 506, 509 (Va. 1971).

And, defendant's testimony "was not the only evidence of speed or reckless driving behavior." *Crest v. Commonwealth*, 40 Va. App. 165, 173 (Va. Ct. App. 2003). The State Trooper testified that Mr. Cady could have seen the motorcyclist for six to eight seconds before impact. The truck driver was able to see the motorcyclist as he approached from the opposite direction; he could see the motorcyclist intended to turn; and he slowed down before approaching the motorcyclist. *See id.* (finding evidence that other drivers could see slowed traffic for miles and that the other drivers slowed and stopped before reaching the traffic was evidence of defendant's speed or reckless driving behavior). Accordingly, the jury properly weighed and considered the evidence and testimony, determining Mr. Cady was guilty of reckless driving.

For the reasons stated above, the Court denies Mr. Cady's request for writ of habeas corpus on the grounds that there was insufficient evidence to support a conviction.

### D. The Court need not reach Mr. Cady's Double Jeopardy claim.

Petitioner argues that, having been "acquitted" by the Court of Appeals, the Double Jeopardy Clause precludes the Commonwealth from trying this matter a second time if the conviction is set aside by this Court. Pet. ¶¶ 32–39. Because the Court finds no basis to grant the petition for habeas corpus, the Court need not reach this issue.

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's Writ for Habeas Corpus. An appropriate order shall issue.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

July 28, 2022
Alexandria, Virginia